IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMY THOMAS,                              )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          1:21CV103
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of Social Security,[1]   )
                                         )
                    Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Amy Thomas ("Plaintiff") brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under, respectively, Titles II and XVI of the Act.  The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on June 3, 2019, alleging a

disability onset date of January 30, 2019 in both applications.  (Tr. at 10, 275-88.)[2]  Her

---

[1] Kilolo Kijakazi was appointed the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the
Defendant in this suit.  Neither the Court nor the parties need take any further action to continue this suit by
reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

applications were denied initially (Tr. at 111-28, 167-77) and upon reconsideration (Tr. at 129-64, 179-98). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 199-200.) On July 1, 2020, Plaintiff, along with her attorneys, attended the subsequent telephonic hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 10.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 21-22), and on December 18, 2020, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

2

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Obesity, insomnia/sleep disturbance, diabetes mellitus, osteoarthritis (OA), gastroesophageal reflux disorder (GERD), hypertension, obstructive sleep apnea (OSA), anxiety disorder, depression disorder, and intellectual delay[.]

(Tr. at 12.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 14-17.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, non-exertional limitations:

> [Plaintiff] can frequently climb and stoop; occasionally kneel, crouch, and crawl. She can frequently handle, finger, push, and pull with the right (dominant) upper

extremity; and frequently reach with the right (dominant) upper extremity. She
can frequently tolerate exposure to moving mechanical parts and high, exposed
places; occasionally tolerate exposure to atmospheric conditions. She can
frequently interact with supervisors and coworkers, but only occasionally
interact with the public. She is limited to unskilled work, as defined by SSR 83-
10; no production-pace work on assembly lines; and occasional changes to the
manner and method of performing the assigned work.

(Tr. at 17-18.) At step four of the analysis, the ALJ found, based on the testimony of the

vocational expert, that Plaintiff's RFC precluded her past relevant work. (Tr. at 20.) However,

the ALJ further determined at step five that, given Plaintiff's age, education, work experience,

RFC, and the testimony of the vocational expert as to these factors, she could perform other

jobs available in significant numbers in the national economy. (Tr. at 20-21.) The ALJ

therefore concluded that Plaintiff was not disabled under the Act. (Tr. at 21-22.)

Plaintiff now challenges the ALJ's decision in four respects. Specifically, she contends

that the ALJ erred by (1) "failing to incorporate all the limitations credited into the hypothetical

question put to the vocational expert," in violation of 20 C.F.R. §§ 404.1545(e) and 416.945(e);

(2) adopting findings from a prior January 29, 2019 administrative decision; (3) improperly

evaluating the opinion of the consultative psychologist, Joseph Appollo, Ph.D; and (4)

"determining [Plaintiff's] RFC before assessing her credibility and the credibility of the

evidence." (Pl.'s Br. [Doc. #12] at 7-8.) After a thorough review of the record, the Court

agrees that the ALJ utilized the wrong standard when weighing the prior administrative

decision, as set out below. Because this error merits remand, the Court need not consider the

additional contentions raised by Plaintiff at this time.

Plaintiff's contention relates to a prior final decision that was issued by the same ALJ

a year and a half earlier, on January 29, 2019. With respect to that decision, Plaintiff filed her

6

application on July 1, 2016, the claims were initially denied in early 2017, a hearing was held

on October 30, 2018, and the decision was issued by the ALJ on January 29, 2019. Plaintiff

filed her present claim thereafter, in June of 2019, alleging an onset date of January 30, 2019,

one day after the prior decision. In denying the present claims on July 15, 2020, the ALJ noted

that he had "adopted the previous RFC" from the prior decision. (Tr. at 18.) Plaintiff now

contends that the ALJ failed to properly cite and apply the relevant framework in weighing a

prior final decision denying her claims for disability.

Under Social Security Acquiescence Ruling 00-1(4), "where a final decision of SSA after

a hearing on a prior disability claim contains a finding required at a step in the sequential

evaluation process for determining disability, SSA must consider such finding as evidence and

give it appropriate weight in light of all relevant facts and circumstances when adjudicating a

subsequent disability claim involving an unadjudicated period." Interpreting Lively v.

Secretary of Health & Human Services—Effect of Prior Disability Findings on Adjudication

of a Subsequent Disability Claim Titles II and XVI of The Social Security Act, AR 00–1(4),

2000 WL 43774 at *4 (S.S.A. Jan. 12, 2000). This ruling is an acknowledgement of the decision

of the Fourth Circuit in Lively v. Sec. of Health & Human Servs., 820 F.2d 1391, 1392 (4th

Cir. 1987), which noted that *res judicata* applies to Social Security disability cases and "prevents

reappraisal of both the Secretary's findings and his decision in Social Security cases that have

become final." The Lively decision was further clarified by the Fourth Circuit in Albright, in

which the court explained:

> Rather than signaling a sea change in the law of preclusion, the result in Lively
> is instead best understood as a practical illustration of the substantial evidence
> rule. In other words, we determined that the finding of a qualified and
> disinterested tribunal that Lively was capable of performing only light work as

of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence. To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency adjudications should carry considerable weight.

Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 477–78 (4th Cir. 1999). While an ALJ must consider prior findings and conclusions that have become final, he or she is not bound to adopt those findings verbatim but must consider the prior findings and assign a weight to such findings. Id. The Social Security Administration issued Acquiescence Ruling 00–1(4) following the Lively and Albright decisions, promulgating the procedure an adjudicator must follow when there is a final decision by the ALJ or Appeals Council in a prior disability claim:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

AR 00–1(4), 2000 WL 43774 at *4.

In the present case, Plaintiff argues that the ALJ failed to follow these directives when considering the impact of Plaintiff's prior, adverse administrative decision, dated January 29, 2019. Plaintiff's argument stems, in large part, from the ALJ's mischaracterization of the standard set out in the case law and the Acquiescence Ruling based upon it. In positing an RFC identical to that in the 2019 decision, the ALJ specifically noted that the "RFC is derived

8

from an application of" Albright, Lively, and AR 00-1(4). (Tr. at 18.) However, he then explained as follows:

> These authorities require that, when adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim, adjudicators must adopt disability findings (including findings of RFC) from the final decision by an [ALJ] or the Appeals Council on the prior claim. However, said finding need not be adopted if there is new and material evidence relating to the finding or there has been a change in the law, regulations, or ruling affecting the finding or the method for arriving at the finding.

(Tr. at 18.) In short, the ALJ misconstrued the relevant "authorities" as requiring adjudicators to adopt prior findings in the absence of "new and material evidence," rather than to assign appropriate weight to the prior decision in the context of the evidence as a whole. This characterization fails to reflect the more nuanced approach in AR 00-1(4), which, as set out above, provides for the consideration of myriad factors, including the length of time between the prior ruling and the present claims and whether Plaintiff's impairments were subject to change over time. As Plaintiff correctly notes,

> Nowhere in AR 00-1(4) does it refer to adopting an RFC finding from a prior ALJ decision. On the other hand, the court in Albright noted that
>
>> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision . . . on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding.
>
> Albright, 174 F.3d at 474-75 (quoting AR 94-2(4)). But in citing this language, the court was referring not to the principles that underlay AR 00-1(4), but rather to the rescinded AR 94-2(4), whose mechanical application of prior findings was found to violate the "principles of finality and fundamental fairness drawn from § 405(h)" and "is not an accurate restatement of our decision in Lively." Albright, 174 F.3d at 477-78.

9

(Pl.'s Br. at 10.)  Thus, as noted by Plaintiff, the standard that the ALJ set out and relied on in this case, that prior findings from a final decision must be adopted unless there is new and material evidence related to the finding, is the standard that was initially adopted by the SSA in AR 94-2(4) in response to Lively, but that standard was specifically repudiated by Albright and rescinded and replaced by AR 00-1(4).

Defendant contends that, despite this misstatement of the standard, the ALJ's decision demonstrates that he did, in fact, take the relevant factors into consideration when weighing the prior administrative decision.  Defendant's response fails to recognize that ALJ's consideration of relevant factors may still constitute error if he considered them against a standard more deferential to the Commissioner.  Giving prior findings "appropriate weight in light of all relevant facts and circumstances" is quite a different proposition than being *required* to adopt them absent new and material evidence to the contrary.  As Plaintiff correctly points out, the SSA specifically recognized the significance of this difference in rescinding AR 94-2(4) and enacting AR 00-1(4) to accurately reflect the Fourth Circuit's holding in Lively and Albright.  Although it appears that the ALJ in this case did consider factors, including the brief passage of time, in finding that Plaintiff's RFC remained unchanged from the January 29, 2019 decision, the Court simply cannot conclude from the record before it that the ALJ (1) applied the correct standard in making his determinations and (2) would have reached the same conclusions had the correct standard been applied.  In the absence of such showings, substantial evidence fails to support the ALJ's RFC finding.  Accordingly, the Court

10

recommends remand so that the ALJ may clarify these issues in the first instance and provide a decision susceptible to judicial review.[5]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion to for Judgment on the Pleadings [Doc. #11] should be GRANTED.

This, the 30th day of August, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[5] As noted by Plaintiff, this error regarding the standard applicable to the prior administrative decision may also have played a role with respect to Plaintiff's other alleged errors related to the consideration of the new evidence. For example, Plaintiff contests the ALJ's treatment of the opinion of the Consultative Examiner Dr. Appollo, who after testing opined that:

> [Plaintiff] has borderline ability to understand, retain and follow instructions. [Plaintiff] has marked difficulty in simple calculations. She appears able to read and write at a low level. [Plaintiff] had very poor and deficient ability at delayed memory skills. She was unable to recall any of the three words. [Plaintiff] would have significant problems in the ability to sustain attention to perform simple repetitive tasks.

(Tr. at 558.) The ALJ found this opinion "generally unpersuasive" as inconsistent with the "longitudinal record" because Plaintiff "presented during multiple evaluations without any documented mental impairment, limitation, or restriction." (Tr. at 13.) However, as Plaintiff notes, the longitudinal record does reflect a documented mental impairment, including that she attended special education classes in school and earned only a certificate, not a diploma. (Tr. at 360-62.) Moreover, the ALJ included "intellectual delay" as an additional severe impairment at Step Two, apparently based on the examination by Dr. Apollo, but the ALJ did not include any modification in the RFC to reflect the intellectual delay and instead adopted the RFC from the prior administrative determination. Similarly, the ALJ did not include all of the additional RFC limitations posited by the state agency physician Dr. McPherson-Salandy on October 31, 2019 (Tr. at 142), despite finding her opinion "persuasive" (Tr. at 13), and the ALJ did not address or explain the differences, instead adopting the RFC from the prior administrative decision. The Court need not further address or resolve these issues in light of the resolution of the issue above requiring remand, but these matters can also be further addressed as part of the ALJ's full review on remand.

11